IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 423-876-5518 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 310260050967968 (TT-9) | Case No. 1:21-mj- /76<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Andrew Bergren, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 423-876-5518 with International Mobile Subscriber Identity 310260050967968 with listed subscriber of Kirstie EVANS ("**Target Cell Phone #9**"), whose service provider is T-Mobile, a wireless telephone service provider whose legal compliance center is headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. **Target Cell Phone #9** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have been since 1997. As such, I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and empowered by law to conduct investigations of, among other things, offenses enumerated in Title 18, United States Code, Section 2516. I have been employed as a Special Agent with DEA for the past 23 years. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I have received specialized training in the enforcement of laws concerning the activities of narcotics traffickers including four months of DEA basic training in Quantico, Virginia as well as periodic refresher training offered by the DEA. I am currently assigned to the Chattanooga Resident Office.

4. During my experiences and tenure as a narcotics investigator, I have investigated and participated in investigations of organized criminal groups violating federal drug trafficking laws. As part of my official duties, I have utilized and been involved with most traditional law enforcement techniques, including: visual surveillance, witness interviews, execution of search warrants, the use of cooperating witnesses, seizure of drug evidence, controlled purchases of drug evidence, court-authorized pen registers, court-authorized interceptions of wire communications, and undercover techniques. I have debriefed numerous cooperating defendants and confidential informants regarding the habits, practices, methods, and general behavior of criminal groups engaged in organized criminal activity. I have personally participated in Title III wire intercept investigations, including investigations involving large-scale drug trafficking organizations and drug traffickers. I have received specialized training in conducting drug investigations and have attended training and lectures featuring government attorneys and law enforcement officials.

5. Over the course of my career, I have participated in numerous arrests of known drug traffickers and their associates. This experience has afforded me an opportunity to observe and investigate methods, schemes, and operations used by organized groups, including the use of cellular telephones, social media accounts, and digital display paging devices, and the use of numerical codes and code words to conduct the transactions. In addition, I have participated in investigations concerning the concealment of proceeds of controlled substances, including assets, monies, and bank records, and the identification of co-conspirators through the use of drug ledgers, telephone toll records, telephone bills, photographs, social media accounts, and financial records. These investigations have resulted in the arrests of individuals who have smuggled, received, and/or distributed controlled substances, including methamphetamine, cocaine hydrochloride, cocaine base, heroin, and marijuana, as well as the seizure of controlled substances and proceeds of the sale of controlled substances. I know based upon my training and experience that narcotics traffickers and money laundering organizations routinely use several operational techniques. These practices are designed and implemented to achieve two paramount goals: first, the successful facilitation of the organization's illegal activities that consist of the transportation and distribution of controlled substances and subsequent collection of the proceeds of that illegal activity; and second, minimizing the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) have been committed, are being committed, and will be committed by Kirstie Gail EVANS. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Bruce SUTTON, Crystal GENSEMER, Vincent Curtis LEE, Reggie HELTON, and others regarding possible violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b).

10. On March 17, 2021, Vincent Curtis LEE was arrested for a Federal Supervised Release Violation in the Eastern District of Tennessee and two federal search warrants were executed at locations LEE utilized to distribute and store drugs and drug proceeds. During his arrest and the execution of these search warrants, methamphetamine, guns, and U.S. Currency were located and seized. During LEE's incarceration at the Hamilton County Silverdale Detention Facility, LEE's calls have been monitored occasionally, by Special Agent Andrew Bergren and Task Force Officer William Johnson.

11. On June 10, 2021, LEE made an outgoing call utilizing Securus Technologies, which notifies those utilizing the system that calls are recorded and can be monitored. LEE dialed telephone number 1-423-876-5518 (**Target Telephone #9**), utilized by Kirstie Gail EVANS. Securus identifies the user of the phone number when registered on the system and Target Telephone #9 identifies the user as Kirstie EVANS at 2420 Charlotte Avenue, Chattanooga, TN, 37415. Agents are aware from previous interviews and surveillance that EVANS, who was once in a relationship with LEE is a involved with LEE's Drug Trafficking Organization ("DTO"). EVANS also has previous convictions in State court for possession of methamphetamine for resale, possession of controlled substance, and possession of drug paraphernalia. EVANS plead guilty to all charges and attended Hamilton County's Drug Court. During this call, LEE addressed the female as "Kirstie" and asked her to send $1,500.00 to an account of "caliboo2007" and asked EVANS to label the transaction, "For Curt". EVANS asked if the name of the account is Jasmine Poole, and LEE acknowledged. Your Affiant believes this payment to be for LEE to receive a cell phone in jail while incarcerated.

12. LEE next asked EVANS if she had spoken with "his guy and his friend." EVANS explained to LEE that she had spoken with him and he had told her what all she needed to do and was waiting for LEE to call him.

13. On June 11, 2021, at approximately 08:38 am, LEE made an outgoing call to telephone number 1-423-876-5518 (**Target Telephone #9**), utilized by EVANS. LEE started the conversation asking how everything is going. EVANS explained to LEE that she was going to get a tire put on her car and to get her deposit for the room. EVANS continued to tell LEE that she needed to go see "Greg" to get the money he owes to her. LEE acknowledged and told EVANS to take "Lil Babie," known by your Affiant to be Jamal SHEPHERD, down there with her. Your

Affiant through knowledge of this investigations knows SHEPHERD, aka "lil Babie," as being labeled as LEE's "Muscle" for the DTO. LEE would utilize SHEPHERD to strong arm those who owed money to LEE's DTO or intimidate competitors who would sell narcotics. LEE then questioned EVANS if she had found what she was looking for and explained "not the usual but the other thing." Your Affiant believes based on training, experience, and knowledge of this investigation that LEE is asking EVANS if she located a different type of narcotics as opposed to methamphetamine, since methamphetamine is the most common drug sold by the LEE DTO. EVANS acknowledged and LEE's asked "Here in town, correct?" EVANS confirmed and LEE told EVANS he thought he knew who EVANS was talking too. EVANS replied, "Okay" and LEE then asked if "he is incarcerated?" At this point, EVANS began to whisper and stated she didn't know what LEE was talking about. LEE told EVANS that they would talk about it when he gets this "other thing." EVANS confirmed and LEE then told EVANS that if she needed "that," all she had to do is ask him. LEE continued to tell EVANS to be very careful of whom she was dealing with. LEE then moved away from that subject and told EVANS that he is still waiting and that he would let EVANS know. EVANS understood and expressed that she had it all ready and LEE confirmed. Your Affiant believes that LEE is communicating with a source of supply by means of another communication device and is awaiting the source to advise when they are ready for EVANS to pick up narcotics to return to the Eastern District of Tennessee. LEE questioned EVANS about what she has been doing and EVANS explained that she stayed at the "6" last night. Agents know the "6" to be the Motel 6. LEE told EVANS that she didn't need to be at the "6." EVANS replied that she knew, she was visiting friends, and that she doesn't do anything there. Later in the conversation, LEE told EVANS that he would call EVANS when everything was ready. Your Affiant knows through training and experience that LEE commonly utilized

hotel/motels to distribute his narcotics prior to his arrest. Your Affiant knows the Motel 6 to be a low budget hotel that law enforcement frequently conducts law enforcement action at. Your Affiant believes LEE understands that and is fear of EVANS getting arrested while frequenting the Motel 6.

14. Based on training, experience, and knowledge of this investigation, you Affiant believes that LEE and EVANS are speaking about drug debts and EVANS continuing LEE's Drug Trafficking Organization narcotic operations at the direction of LEE, while he is incarcerated.

15. On June 14, 2021, Hamilton County Sheriff's Office Corrections Division conducted a search of LEE's cell. During this search officers located two cell phones, three shanks "Jail made Knives," and one hypodermic needle. All evidence were collected and your Affiant is currently awaiting to have the phones analyzed.

16. On July 12, 2021, United States Magistrate Judge Christopher H. Steger issued a search warrant for location information associated with **Target Cell Phone #9** for a period of thirty days.

17. On August 06, 2021, Hamilton County Sheriff's Office Detective William Bailey listened to a recorded call made by Vincent Curtis LEE to Kirstie EVANS at **Target Telephone #9** on August 05, 2021 at10:41 pm. EVANS answered the call, "hello, hello, me no speak no English." LEE then questions EVANS as to why she sounds like she is in an airplane and what EVANS was doing. EVANS then begins to explain to LEE that she is on her way home from work from dealing with her boss, and his boss, and her co-workers. LEE asks if "Josh" is with EVANS and she explains, "No, I went to work by myself." EVANS later in the conversation tells LEE she has a "runner" behind her, and that they are getting off an exit to change a tire and then states to LEE, "you know a runner, to run interference if need be." LEE asks if it is someone she knows

and EVANS responds yes it is someone she knowns and LEE tells her not to say anything else. Your Affiant verified through court ordered electronic surveillance that EVANS was in Atlanta, Georgia, and travelled back to Chattanooga, Tennessee. Based on your affiant's training, experience, and knowledge of this investigation, your affiant believes that EVANS is now traveling to Atlanta, Georgia to pick up methamphetamine and return to Chattanooga, Tennessee. The conversation regarding a "runner" is a reference to a separate car following EVANS. This is common amongst drug traffickers when transporting controlled substances in vehicles, in order to provide some protection and/or or diversion from law enforcement.

18. Your Affiant believes that based upon the aforementioned probable cause, that Kirstie Gail EVANS is using **Target Cell Phone #9** to facilitate her drug trafficking activities and in the furtherance of this drug conspiracy. I believe that obtaining the requested geo-location of **Target Cell Phone #9** through T-Mobile will allow investigators to locate the subject(s) utilizing the Target Cell Phones without jeopardizing the investigation and therefore investigators will more likely be successful in obtaining the necessary evidence to further their investigation. I further believe that the requested search warrant will enable investigators to more effectively collect evidence of the crimes being committed by the targeted organization, identify locations utilized by the organization to facilitate their criminal activities, identify co-conspirators and their locations.

19. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively

Page **8** of **11**
Case 1:21-mj-00176-SKL   Document 3   Filed 08/19/21   Page 8 of 14   PageID #: 13

precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

20. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile's network or with such other reference points as may be reasonably available.

21. Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

22.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

23.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice for 90 days. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24.     I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile network or with such other reference points as may be reasonably available, and at such

intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

26. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Additionally, this Affidavit contains statements of co-conspirators in the investigation which, if revealed at this time, may jeopardize the safety of said individuals or result in witness tampering or intimidation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Andrew Bergren
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on August 19, 2021

_____
HONORABLE SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 423-876-5518 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 310260050967968 | Case No. 1:21-mj- 176<br><br>**Filed Under Seal** |

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephones assigned call number 1-423-876-5518 with International Mobile Subscriber Identity 310260050967968 with listed subscriber as Kirstie EVANS ("**Target Cell Phone #9**"), whose service provider is T-Mobile, a wireless telephone service provider whose legal compliance center is headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

2. Records and information associated with the **Target Cell Phone #9** that are within the possession, custody, or control of T-Mobile: including information about the location of the cellular telephones if they are subsequently assigned a different call number.

Page 1 of 1

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 423-876-5518 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 310260050967968 | Case No. 1:21-mj- 176<br><br>**Filed Under Seal** |

# ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

All information about the location of the **Target Cell Phone #9** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Cell Phone #9**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile. T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phone #9** on T-Mobile's network or with such other reference points as may be reasonably

available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

**IF LOCATION INFORMATION IS EVIDENCE OF A CRIME:**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) involving Kirstie EVANS or unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.